# United States Tax Court

T.C. Memo. 2023-12

HRACH SHILGEVORKYAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 9247-15.                              Filed January 23, 2023.

————————

*Jason M. Silver* and *Chris J. Sheldon*, for petitioner.

*John R. Gordon* and *Michael R. Harrel*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: By statutory notice of deficiency dated February 17, 2015, the Internal Revenue Service (IRS or respondent) determined a deficiency in petitioner's federal income tax of $22,867 and an accuracy-related penalty pursuant to section 6662(a) of $4,573 for the 2012 taxable year.[1]  After respondent's concession,[2] the remaining issue for decision is whether petitioner is entitled to deduct on Schedule A,

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round some monetary amounts to the nearest dollar.

[2]After the trial was held, respondent conceded that petitioner is not liable for the accuracy-related penalty because respondent has not satisfied his burden of production pursuant to section 6751(b)(1).

[*2] Itemized Deductions, mortgage interest paid of $66,354. We resolve this issue in favor of respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Facts and the attached Exhibits are incorporated herein by this reference. Petitioner resided in Arizona when his Petition was timely filed with the Court.

When petitioner was 12 years old, he and his family immigrated as refugees to the United States from Armenia in 1987 or 1988. Petitioner has two older brothers, Edvard and Artur. Petitioner and his brothers co-own a number of auto shops, a jewelry store, and a restaurant. He and his brothers are also members of Shilgevorkyan, LLC, which owns and rents condominiums at Mountain Park Condominiums in Phoenix, Arizona.

During 2008 through 2011 petitioner was involved in a check cashing scheme with his brothers. As part of the check cashing scheme, false Forms 1120S, U.S. Income Tax Return for an S Corporation, were filed for some of the businesses that he co-owned with his brothers. Petitioner executed a closing agreement with the IRS for the 2008–11 taxable years which included an assessment of taxes due and civil fraud penalties pursuant to section 6663. Edvard pleaded guilty to the filing of false federal income tax returns and was sentenced to prison. As part of Edvard's plea agreement, he admitted that he acted willfully and knew the 2008–11 returns he filed had false information. Additionally, as part of his plea agreement, his brothers would not be prosecuted for the check cashing scheme.

The property involved in this case is in Paradise Valley, Arizona. In 2005 Edvard purchased the property for $1,525,000, making a $392,896 downpayment and obtaining a $1,143,750 bank loan from Wells Fargo, N.A. (Wells Fargo). Edvard and his wife, Lusine, were the borrowers. Around the same time as the property purchase, Edvard, Lusine, and Artur took out a $1,200,000 construction loan. Both loans were secured by the Paradise Valley property. The construction loan funds were used to construct, inter alia, a 5,300-square-foot house and a separate 1,700-square-foot guest house on the property.

Then on August 25, 2006, Edvard, Lusine, and Artur entered into temporary bridge financing with Wells Fargo to combine the previous loan and the construction loan (2006 bridge loan). In October 2008 they

[*3] refinanced the 2006 bridge loan with a new loan from Wells Fargo for $2 million. In connection with this loan, they executed a disclosure statement which included the following text: "Someone buying my home cannot assume the remainder of the obligation on the original terms." The loan agreement also included text that indicated if the borrowers sold or transferred the property without the lender's prior written consent, the lender could require immediate repayment.

The deed of trust related to this loan stated that the borrowers would "occupy, establish, and use the [p]roperty as [b]orrower's principal residence within 60 days after the execution" of the document. The deed of trust further stated that the Paradise Valley property would be the borrower's principal residence for at least one year unless the lender agreed in writing or there are "extenuating circumstances" beyond the borrower's control. It also included a provision that any transfer by a borrower of his beneficial interest in the property constituted a default and Wells Fargo could require immediate payment of the full loan.

Artur never contributed to the downpayment of any of the loans. He neither lived at the Paradise Valley property nor paid any of the property's expenses. Artur executed a quitclaim deed dated August 18, 2010, which conveyed all his interest in the property to petitioner. No request was made to Wells Fargo to approve Artur's conveyance of interest in the property. Wells Fargo did not approve the quitclaim deed.

Before the execution of the quitclaim deed, Edvard paid the expenses related to the Paradise Valley property. Petitioner did not pay Artur in exchange for the quitclaim deed. There is no documentation associated with the quitclaim deed, including the substitution of petitioner as a borrower in Artur's place. During 2012 petitioner made no payments to Wells Fargo related to the loan secured by the property. Wells Fargo did not issue petitioner a Form 1098, Mortgage Interest Statement, for 2012.

In September 2010 Edvard listed the Paradise Valley property for $4 million, but it did not sell at the time. The property was relisted for $3,800,000 in 2013. Starting in July 2013, Edvard paid all the expenses related to the property.

Petitioner lived in the separate guest house on the Paradise Valley property from September 2010 until he purchased a new house in April 2013 in Phoenix. He also stayed at the Mountain Park

[*4] Condominiums, which were used by other family members. Before living in the guest house, petitioner lived with Lusine's family, i.e., Edvard's in-laws, in Phoenix, referred to as "15th Place."

For 2009–14, the electricity account with Arizona Public Service for at least one of the units at the Mountain Park Condominiums was in petitioner's name. For 2012 petitioner paid the electricity charges by personal check; before 2012, these expenses were paid by Shilgevorkyan, LLC. The cable television account with Cox Communications for one of the units at the Mountain Park Condominiums was also in petitioner's name for 2012. In 2012 petitioner renewed his driver's license and listed his address at the Paradise Valley address. Petitioner did not list the Paradise Valley address on his checks or bank statements.

Petitioner obtained a loan so he could purchase his new house. As part of the loan application process, he executed a uniform residential loan application dated February 21, 2013. He listed his address as the Paradise Valley property and indicated that he had rented it for one year since the date of the uniform residential loan application. The value of this property was not included in his list of assets.

Petitioner received numerous third-party information returns for 2010–13. None of the information returns for 2010, 2011, or 2013 reflects the Paradise Valley property as his address. For 2013 only one third-party information return, Form 1099–G, Certain Government Payments, from the Arizona Department of Revenue lists the Paradise Valley property as petitioner's address. The 15th Place address was listed as petitioner's address on most of the third-party information returns.

On his 2010 federal income tax return petitioner listed the 15th Place address as his address, and on this return he did not claim a deduction for mortgage interest paid related to the Paradise Valley property. On his 2011 federal income tax return petitioner listed the Paradise Valley property as his address. On his 2012 federal income tax return petitioner listed his new house in Phoenix as his address, and on the Schedule A attached to this return he deducted, inter alia, $66,354 for mortgage interest paid related to the Paradise Valley property. This deduction was for one-half the total mortgage interest paid in 2012 on the Paradise Valley loan as reported by Wells Fargo on the Form 1098 that was issued to Edvard and Lusine.

[*5]                              OPINION

I.    *Burden of Proof*

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. § 7491(a)(1) and (2).

Petitioner contends that he has met the requirements of section 7491(a)(2) and produced credible evidence such that the burden of proof has shifted to respondent. We disagree. Petitioner failed to maintain and produce records as required to substantiate his entitlement to the mortgage interest deduction he claimed on his 2012 Schedule A. Apart from self-serving testimony by petitioner and Edvard, petitioner has failed to produce evidence to support his position. Both petitioner and Edvard offered testimony that was vague and contradictory. In addition, we note that Edvard's recent conviction for filing false federal income tax returns renders his testimony suspect. *See Welker v. Commissioner*, T.C. Memo. 1997-472, 1997 Tax Ct. Memo LEXIS 557, at *17 ("[A] conviction under section 7206(1) may render a taxpayer's credibility suspect."). Therefore, the burden of proof remains with petitioner.

II.   *Section 163 Mortgage Interest Deduction*

A.    *Standards*

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability. § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001); *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

**[*6]**    Section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness.  Section 163(h)(1), however, provides that in the case of a taxpayer other than a corporation (i.e., an individual) no deduction is allowed for personal interest paid or accrued during the taxable year.  Qualified residence interest is excluded from the definition of personal interest and so is deductible under section 163(a).  *See* § 163(h)(2)(D).

The term "qualified residence interest" means any interest paid or accrued during the taxable year on either acquisition or home equity indebtedness with respect to any qualified residence of the taxpayer. § 163(h)(3)(A).  A taxpayer's qualified residence is his principal residence (within the meaning of section 121) and one other residence of the taxpayer which is selected by the taxpayer and is used by the taxpayer as a residence (within the meaning of section 280A(d)(1)). § 163(h)(4)(A).  The determination of whether any property is a qualified residence of the taxpayer shall be made as of the time the interest is accrued.  § 163(h)(3)(A) (flush language).

Acquisition indebtedness is any indebtedness which is (1) incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer and (2) secured by such residence. § 163(h)(3)(B)(i).  For any period, the aggregate amount of acquisition indebtedness shall not exceed $1 million.  § 163(h)(3)(B)(ii). Acquisition indebtedness also includes any indebtedness secured by such residence resulting from the refinancing of acquisition indebtedness, but only to the extent the amount of the indebtedness resulting from such refinancing does not exceed the amount of the refinanced indebtedness. § 163(h)(3)(B)(i) (flush language).  The parties do not dispute that the mortgage secured by the Paradise Valley property qualifies as acquisition indebtedness.

Where a mortgaged property is jointly owned and the co-owners are jointly liable on the mortgage, each owner is entitled to a deduction for the mortgage interest that he actually pays out of his own funds. *Jolson v. Commissioner*, 3 T.C. 1184, 1186 (1944); *Castaneda-Benitez v. Commissioner*, T.C. Memo. 1981-157.  The indebtedness generally must be an obligation of the taxpayer claiming the deduction, not the obligation of another. *Golder v. Commissioner*, 604 F.2d 34, 35 (9th Cir. 1979), *aff'g* T.C. Memo. 1976-150; *Hynes v. Commissioner,* 74 T.C. 1266, 1287 (1980).  Interest paid by the taxpayer on a real estate mortgage of which he is the legal or equitable owner—even though the taxpayer is not directly liable upon the bond or note secured by such mortgage—

**[\*7]** may be deducted as interest on his indebtedness. Treas. Reg. § 1.163-1(b).

State law determines the nature of property rights, such as legal or equitable ownership, while federal law determines the appropriate federal tax consequences of those rights. *See United States v. Nat'l Bank of Com.*, 472 U.S. 713, 722 (1985); *Blanche v. Commissioner*, T.C. Memo. 2001-63, *aff'd*, 33 F. App'x 704 (5th Cir. 2002). Arizona law applies in determining petitioner's property rights.

B.    *Analysis*

Petitioner contends that he owns half of the Paradise Valley property and has properly deducted his share of the qualified residence interest. We need not accept a taxpayer's self-serving testimony when the taxpayer fails to present credible, corroborative, documentary evidence. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). Petitioner must satisfy the following three requirements to be entitled to a deduction pursuant to section 163(a) and (h)(2)(D): (1) the indebtedness must be his obligation, (2) he must either be the legal or equitable owner of the property subject to the mortgage, and (3) the residence is his qualified residence. *See* Treas. Reg. § 1.163-1(b).

1.    *Obligation on the Debt*

Petitioner argues that he was a legal owner of the Paradise Valley property, and it was his only residence during 2012. He offered no evidence to show that he made any mortgage interest payments relating to the Paradise Valley property, including records of payment that he claimed he made to Edvard. There is no record that petitioner made payments to Wells Fargo or that Wells Fargo issued Form 1098 to him.

Edvard testified that he had an agreement with petitioner in which petitioner would pay half of the Paradise Valley property expenses and be entitled to half of the profits from the sale of the property. Petitioner produced no documentary evidence in support of the purported agreement. Still, for the sake of argument we will assume that petitioner was partially obligated to make payments on the Wells Fargo loan.

2.    *Legal or Equitable Ownership of the Property*

Petitioner contends that the quitclaim deed shows that he has an interest in the Paradise Valley property. The quitclaim deed does not

**[*8]** establish whether Artur had title in the property. A quitclaim deed cannot convey greater rights to property than those that the grantor possessed. *See, e.g., SWC Baseline & Crimson Invs., LLC v. Augusta Ranch Ltd. P'ship*, 265 P.3d 1070, 1079 (Ariz. Ct. App. 2011). Because Artur did not have an interest in the Paradise Valley property, he could not transfer ownership to petitioner.

Under Arizona law, an accommodation is made when a single instrument is signed both by the primary obligor who receives the benefit of the instrument and by the secondary obligor who does not receive the benefit of the instrument (the accommodation party). Ariz. Rev. Stat. Ann. § 47-3419(A) (West 2022). If an accommodation party ends up paying on the instrument, that party may seek reimbursement from the primary obligor and may enforce the instrument, but the party does not have a right to the underlying property. Ariz. Rev. Stat. Ann. § 47-3419(E) (West 2022).

From the testimony we reach the conclusion that Artur was never an owner of the Paradise Valley property, but rather was an accommodation party. Artur was a cosigner but never made a single payment, and there is no evidence to support that he could force a sale of the property. Under Arizona law, Artur was an accommodation party and had no ownership interest in the property. Therefore, Artur could not transfer ownership to petitioner via a quitclaim deed.

We conclude that petitioner did not have legal title to the Paradise Valley property because Artur never had an interest in the property to transfer to him. Neither did petitioner have equitable title to the property. There is no evidence showing that petitioner was liable for payments due on the Wells Fargo loan. Petitioner did not pay any consideration for the quitclaim deed. He did not provide credible evidence that he paid expenses associated with the property or that he bore any benefits or burdens of the property. *See Baird v. Commissioner*, 68 T.C. 115, 124 (1977). Therefore, petitioner is not an equitable owner of the property.

### 3. *Qualified Residence*

For petitioner to be entitled to the mortgage interest deduction, the residence needs to be his qualified residence. Whether property is used by the taxpayer as the taxpayer's residence under section 121 depends upon all the facts and circumstances. Treas. Reg. § 1.121-1(b)(1).

**[*9]** Even if petitioner was able to substantiate his payments to Edvard, we would still uphold respondent's determination because petitioner failed to meet his burden of establishing that the Paradise Valley property was his principal residence during 2012 or that he selected it as "1 other residence" for purposes of section 163(h)(4)(A)(i). Documentary evidence presented at trial was contradictory.

Petitioner had his mail sent to multiple addresses; almost all of the information returns issued to him in the relevant years listed 15th Place as his address. He listed the Paradise Valley property as his residence on a February 21, 2013, uniform residential loan application but indicated that he was a renter. The property was not listed on his bank statements or personal checks. He admitted to staying at the Mountain Park Condominiums at times, and certain utilities at some of those condominium units were in his name and paid out of his personal banking account. Indeed, the record does not indicate how much time during 2012 he spent at either the Paradise Valley property or the Mountain Park Condominiums. We conclude that petitioner has not met his burden of proving that the Paradise Valley property was his qualified residence for 2012.

III.   *Conclusion*

We hold that petitioner is not entitled to the mortgage interest deduction of $66,354 that he claimed on his 2012 Schedule A.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty.*