265 P.3d 1070

SWC BASELINE & CRISMON INVES-TORS, L.L.C., an Arizona limited lia-bility company, Plaintiff/Appellant,

California Bank and Trust, a California banking corporation, Third Party Defendant/Appellant,

v.

AUGUSTA RANCH LIMITED PART-NERSHIP, a Delaware limited part-nership, Defendant/Appellee.

Augusta Ranch Limited Partnership, a De-laware limited partnership, Counter-claimant/Third Party Plaintiff/Appel-lant/Cross–Appellee,

v.

SWC Baseline & Crismon Investors, L.L.C., an Arizona limited liability com-pany, Counterdefendant/Appellee,

A.R. Development L.L.C., an Arizona lim-ited liability company, Third Party De-fendant/Appellee/Cross–Appellant,

W.M. Grace Construction, Inc., a Missouri corporation; California Bank and Trust, a California banking corporation; Mark A. Voight and Michelle C. Mencuccini, husband and wife; C. Dennis Knight; Michael Kern, Third Party Defen-dants/Appellees.

Nos. 1 CA–CV 09–0241, 1–CA–CV 10–0100.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 22, 2011.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Timothy J. Thomason, Michael J. Plati, Phoenix, Attorneys for Plaintiff/Appellant/Counterdefendant/Appellee, SWC Baseline & Crismon Investors, L.L.C.; Third Party Defendant/Appellant/Cross–Appellee, California Bank and Trust; and Third Party Defendant/Appellee, W.M. Grace Construction, Inc.

David B. Earl, Attorney at Law, By David B. Earl, Phoenix, and Newmeyer & Dillion LLP, By Gregory L. Dillion, pro hac vice, Newport Beach, CA, Attorneys for Defendant/Appellee/Counterclaimaint/Third Party Plaintiff/Appellant/Cross–Appellee, Augusta Ranch Limited Partnership.

The Cavanagh Law Firm, P.A. By Henry L. Timmerman, Taylor C. Young, Phoenix, Attorneys for Third Party Defendant/Appellee/Cross–Appellant, A.R. Development and Third Party Defendants/Appellees, Mark A. Voigt, Michelle C. Mencuccini, C. Dennis Knight and Michael Kern.

## OPINION

JOHNSEN, Judge.

¶ 1 In 1992 a corporate investor arranged to acquire more than a thousand acres of real estate from a partnership of which it had become the sole partner. By mistake, the investor prepared and recorded a warranty deed that omitted a critical quarter-acre at the center of a commercial intersection. When the mistake was discovered years later, a firestorm of litigation ensued among the investor's successor and other parties claiming an interest in the omitted property. In this appeal, we take up issues of reformation, slander of title, trespass and conversion as they may apply to the circumstances. We also address claims under the false-recording statute, Arizona Revised Statutes ("A.R.S.") section 33–420.

## FACTS AND PROCEDURAL HISTORY

¶ 2 During the late 1980s a general partnership called The Crossings owned 1,038 acres at the southwest corner of Baseline and Crismon Roads in Mesa. The Crossings had acquired the land in two separate transactions. In January 1987, it purchased title to all but a 150–by–150 square (the "Corner") at the northeast tip of the larger parcel. The deeds issued in that transaction specifically excluded the Corner, which then was owned by the City of Mesa. The Crossings bought the Corner from the City five months later, in June 1987.

¶ 3 The Crossings had two general partners, Amcor Investments Corporation and Taiyo Development U.S.A., Inc. Amcor sold its interest in The Crossings to Taiyo in September 1991. In January 1992, The Crossings, by then solely owned by Taiyo, issued to Taiyo a warranty deed conveying property at the Baseline and Crismon intersection. The warranty deed attached a legal description of what was conveyed. There is no evidence in the record that as the sole partner in The Crossings, Taiyo intended to convey to itself anything other than all the property the partnership owned at the intersection, including the Corner. Nevertheless, the legal description attached to the warranty deed specifically excluded the Corner. (It appears that the legal description attached to the January 1992 warranty deed was the legal description attached to the January 1987 transaction by which The Crossings had acquired everything *except* the Corner.) On the same day, Taiyo conveyed what it had acquired from The Crossings to its affiliate, Augusta Ranch Limited Partnership. The

warranty deed Taiyo gave Augusta Ranch attached the legal description that specifically excepted the Corner.

¶ 4 In 1997, Augusta Ranch sold some 616 acres at the Baseline/Crismon intersection to A.R. Development L.L.C. The legal description attached to the purchase and sale agreement specifically excluded the Corner, and a survey that showed the property subject to the sale also excluded the Corner. Mark Voigt, president of the entity that managed A.R. Development, signed the purchase agreement. Voigt recognized at the time of the 1997 transaction that the legal description of the property to be conveyed excluded the Corner. Voigt had been president of Amcor in the 1980s and worked for Augusta Ranch for a few months in 1992, after the conveyance from The Crossings. After this litigation arose years later, Voigt testified that in 1997, he mistakenly thought the City still owned the Corner. According to Voigt, A.R. Development intended to purchase all the property Augusta Ranch owned south of Baseline at the intersection. Voigt testified that if Augusta Ranch had owned the Corner, he would have insisted that Augusta Ranch sell it along with the other acreage.

¶ 5 In 1998 and 1999, A.R. Development granted two easements and rights of way in favor of the City over property that included the Corner. According to Voigt, A.R. Development was not concerned that the dedications implicated the Corner because it thought the City owned the Corner anyway. After having the dedications reviewed by an engineer and lawyers, an officer of a company affiliated with Augusta Ranch approved the release of the dedicated property from a deed of trust. At trial, the officer testified that in approving the dedications, she did not realize they implicated the Corner.

¶ 6 In 2002, A.R. Development decided to acquire the Corner so it could package it for sale with other property near the intersection. City records seemed to confirm Voigt's understanding that the City owned the Corner. Despite the fact that record title to the Corner lay with The Crossings, the City conveyed the Corner to A.R. Development by special warranty deed. A.R. Development paid the City $25,500 for the property, and a title company issued a title insurance policy covering the transaction.

¶ 7 The true owner of the Corner finally came to light in March 2003, after A.R. Development contracted to sell the Corner and adjoining property to A & C Properties, Inc. In connection with that transaction, A & C obtained a title report revealing that title to the Corner was held by The Crossings and not by A.R. Development. Accordingly, A & C asked A.R. Development to obtain clear title to the Corner so the larger transaction could be completed.

¶ 8 Hoping for a quick resolution to the issue, A.R. Development contacted Augusta Ranch on June 18, 2003, and explained its view that the Corner had been omitted inadvertently from the 1992 conveyance to Augusta Ranch and from the 1997 sale from Augusta Ranch to A.R. Development. In a letter response dated July 8, Augusta Ranch offered to meet and resolve the matter, noting that "the amount involved is small and it would be quite uneconomical mutually to spend much of our time." Before A.R. Development responded, however, Augusta Ranch wrote again, and from there, things quickly escalated.

¶ 9 In a letter from its lawyer dated July 11, 2003, Augusta Ranch asserted it owned the Corner and demanded that A.R. Development "cease any efforts to market or sell" the property until the title issue could be resolved. Rather than comply with Augusta Ranch's demand to stop trying to sell the Corner, A.R. Development negotiated with A & C to deliver a quitclaim deed to the Corner instead of a warranty deed. A & C then assigned its rights to SWC Baseline & Crismon Investors ("SWC"), which recorded the quitclaim deed on July 29, 2003, and a title company issued a policy insuring SWC's title.[1] SWC promptly entered into a lease for a shopping center to be built on property including the Corner. On July 29, 2003, in connection with construction of the shopping center, California Bank and Trust ("Cal

---

1. The title company later asserted that A.R. Development had represented it would be able to negotiate a solution to the title problem with Augusta Ranch.

Bank") recorded a deed of trust against property that included the Corner. Later, on behalf of SWC, W.M. Grace Construction entered the Corner while building the shopping center.

¶ 10 Meanwhile, unaware that A.R. Development had completed its conveyance, a company identifying itself as the successor to Taiyo on August 14, 2003 executed "corrective" deeds that purported to "correct[ ] the legal description" of the warranty deeds by which The Crossings originally had conveyed the intersection to Taiyo and by which Taiyo had conveyed to Augusta Ranch. The "corrective" deeds amended the legal description of the original warranty deeds to include the Corner; each deed explained that the Corner had been "inadvertently excepted out of the original legal description." No similar corrective deed was executed with respect to the purchase by A.R. Development from Augusta Ranch, however.

¶ 11 A.R. Development did not inform Augusta Ranch it had closed the deal with SWC until September 23, 2003. Augusta Ranch responded on October 1 with a written demand to release any conveyances, instruments and transactions affecting title to the Corner by October 31. In a letter response sent by facsimile dated October 28, Joseph Cattaneo, president of A & C and managing member of SWC, asked to meet with Augusta Ranch and confirmed that SWC's title company would pay Augusta Ranch's attorney's fees for the meeting. In a letter to Cattaneo dated November 4, Augusta Ranch acknowledged it had received the October 28 letter but asserted SWC had not made a "reply of good faith" to the October 1 demand. Augusta Ranch asserted that, to the contrary, A.R. Development had "stolen" the Corner.

¶ 12 After later efforts to resolve the matter failed, *see infra* ¶¶ 58–59, SWC filed a quiet-title action against Augusta Ranch on May 26, 2004. Augusta Ranch counterclaimed, seeking quiet title, and filed counterclaims and cross-claims asserting wrongful recording pursuant to A.R.S. § 33–420(A) and (C) against SWC, A.R. Development and Cal Bank; slander of title against A.R. Development, C. Dennis Knight, Voigt and Michael Kern; trespass against SWC and W.M. Grace; and "trespass to chattels-conversion" against W.M. Grace and SWC.

¶ 13 The superior court granted summary judgment quieting title in favor of Augusta Ranch but entered summary judgment in favor of A.R. Development and Knight, Voigt and Kern on Augusta Ranch's slander-of-title claims and dismissing Augusta Ranch's claims for punitive damages.

¶ 14 Augusta Ranch's wrongful-recording, trespass and conversion claims then proceeded to trial. As a disclosure sanction, however, the court precluded Augusta Ranch from offering evidence of damages caused by the alleged trespass and conversion. The court then granted a directed verdict on those claims for lack of damages. The jury found in favor of Augusta Ranch against SWC, Cal Bank and A.R. Development on the wrongful recording claims. On the claims under A.R.S. § 33–420(A), the jury awarded Augusta Ranch $20,686 against SWC, $2,500 against Cal Bank and $30,000 against A.R. Development. On the claims under A.R.S. § 33–420(C), it awarded Augusta Ranch $25,000 against SWC, $15,000 against Cal Bank and $12,000 against A.R. Development. Additionally, the superior court awarded Augusta Ranch attorney's fees of $229,313.69 against SWC on the quiet-title action, $229,313.69 against SWC and Cal Bank jointly on the wrongful recording claim and $229,313.69 against A.R. Development on the wrongful recording claim.

¶ 15 SWC, Cal Bank, A.R. Development and Augusta Ranch filed timely notices of appeal or cross appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2011).

## DISCUSSION

### I. The Appeals of SWC, Cal Bank and A.R. Development.

### A. Summary Judgment Against SWC on Claim to Quiet Title.

¶ 16 SWC argues Augusta Ranch was not entitled to summary judgment on its quiet-title claim. SWC argues it offered evidence that the Corner's exclusion from the 1997 deed to A.R. Development was the re-

sult of a mutually mistaken belief that Augusta Ranch did not own the Corner, warranting reformation of the deed to include the parcel.

¶ 17 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). A genuine issue of fact exists when "a reasonable trier of fact" could find in favor of the non-moving party on the record presented. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

■■■ ¶ 18 A party seeking reformation of a written agreement must "show that a definite [i]ntention on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution." *State v. Ashton Co.,* 4 Ariz.App. 599, 602, 422 P.2d 727, 730 (1967). Reformation may be granted, *inter alia,* when "there is a mutual mistake that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed." *Chantler v. Wood,* 6 Ariz.App. 134, 138, 430 P.2d 713, 717 (1967).

¶ 19 The evidence before the superior court on summary judgment did not create an issue of fact about what A.R. Development and Augusta Ranch agreed to buy and sell in 1997. As Augusta Ranch argues, Knight, then chief executive officer of A.R. Development, testified in his deposition that the Corner was not included in the sale because neither party believed that Augusta Ranch had the Corner to sell, and Voigt admitted that he knew the legal description in the warranty deed did not include the Corner.

¶ 20 SWC, however, points to testimony by Knight and Voigt that A.R. Development intended to purchase all the acreage Augusta Ranch owned south of Baseline Road. The inference is that if the parties had thought Augusta Ranch owned the Corner, they would have included the Corner in the trans-

action. But given that A.R. Development knew it was not acquiring the Corner, SWC's argument is not that the written contract did not reflect the agreement the parties reached, but that, had the parties known the true facts, they would have reached a different agreement. SWC offers no authority for application of reformation in circumstances such as these. *See Chantler,* 6 Ariz.App. at 138, 430 P.2d at 713; *Ashton,* 4 Ariz.App. at 602, 422 P.2d at 730.

¶ 21 More fundamentally, we cannot accept the premise of SWCs argument, which is that the parties were mutually mistaken in thinking that Augusta Ranch could not convey the Corner to A.R. Development because it did not own it. SWC argues that, unknown to Augusta Ranch and A.R. Development, Augusta Ranch received some unspecified interest in the Corner in the 1992 conveyance from Taiyo. We do not agree. At the time Augusta Ranch conveyed to A.R. Development in 1997, The Crossings held legal title to the Corner, not Augusta Ranch. The conveyances by The Crossings to Taiyo and from Taiyo to Augusta Ranch plainly excluded the Corner. Under the circumstances, A.R. Development's perception in 1997 that Augusta Ranch did not have the Corner to sell was absolutely correct, not a mistake.[2]

¶ 22 Because the record shows both Augusta Ranch and A.R. Development knew the Corner was not to be conveyed as part of the 1997 transaction and the written instruments reflected that understanding, the superior court properly denied reformation and granted summary judgment quieting title in favor of Augusta Ranch.

**B.   The Wrongful Recording Verdicts.**

**1.   Section 33–420(A).**

■■■ ¶ 23 Section 33–420(A) imposes liability on one who records a document "asserting" a "claim [of] interest in" real property, "knowing or having reason to know" the document is "forged, groundless, contains a

---

2.   On appeal, none of the parties argues the corrective deeds failed to convey title as of the date of their execution, August 14, 2003. Although a corrective deed sometimes may "relate back" to the original transaction, *see infra* footnote 3, we are unaware of any authority to support the proposition that the corrective deeds rendered the 1997 conveyance to A.R. Development subject to reformation because of mutual mistake.

material misstatement or false claim or is otherwise invalid."

¶ 24 Augusta Ranch's claim against SWC was based on SWC's recording on July 29, 2003, of the quitclaim deed from A.R. Development. The claim against Cal Bank was based on its recording on July 29, 2003, of a deed of trust over the Corner and a subordination, nondisturbance and attornment agreement, both issued in connection with a debt owed by SWC. The claim against A.R. Development was based on its recordings of the dedications in 1998 and 1999 that purported to create easements and rights-of-way over the Corner, and its recording of the special warranty deed it obtained from the City for the Corner in 2002.

██ ¶ 25 One must be an "owner" or "beneficial title holder" at the time of the recording to assert a claim under A.R.S. § 33–420(A). *See Richey v. Western Pac. Dev. Corp.*, 140 Ariz. 597, 601, 684 P.2d 169, 173 (App.1984). *See generally Hatch Cos. Contracting, Inc. v. Ariz. Bank*, 170 Ariz. 553, 556, 826 P.2d 1179, 1182 (App.1991). As noted in ¶ 10 *supra*, Augusta Ranch did not take title to the Corner before August 14, 2003, when the corrective deeds conveyed the Corner from The Crossings to Taiyo and from Taiyo to Augusta Ranch. As of the dates of the recordings by SWC, Cal Bank and A.R. Development, therefore, Augusta Ranch lacked title to the Corner.[3]

¶ 26 Although Augusta Ranch argues on appeal that it could sue under A.R.S. § 33–420(A) as the "beneficial owner" of the Corner, it offers no legal authority for its assertion that a party in its position is a beneficial owner for purposes of the statute. *Cf. In re Estate of Olson*, 223 Ariz. 441, 446, ¶ 23, 224 P.3d 938, 943 (App.2010) (beneficiary of deed of trust may bring claim pursuant to A.R.S. § 33–420(A)). Accordingly, we reverse the portion of the judgment awarding damages to Augusta Ranch against SWC, Cal Bank

and A.R. Development pursuant to A.R.S. § 33–420(A).

## 2. Section 33–420(C).

### a. Claim against SWC.

██ ¶ 27 Section 33–420(C) imposes liability on one who refuses a request by the "owner or beneficial title holder" to release or correct a recorded document "which purports to create an interest in" real property, "who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid." After obtaining and recording the corrective deeds on August 14, 2003, Augusta Ranch wrote to SWC, Cal Bank and A.R. Development, asking each to release or correct record documents asserting interests in the Corner. The jury found in Augusta Ranch's favor on its claims that SWC, Cal Bank and A.R. Development were liable under § 33–420(C) for failing to do so.

¶ 28 SWC argues that as a matter of law, a quitclaim deed may not constitute a claim of interest in real property subject to A.R.S. § 33–420 because a quitclaim deed does not "purport [ ] to create an interest in" real property. Citing Black's Law Dictionary, SWC argues that because a quitclaim deed "only conveys whatever title a grantor 'may have' in property and does not 'profess[ ] that such title is valid,'" the quitclaim deed it recorded did not purport to create an interest in the Corner for purposes of the statute.

██ ¶ 29 "A quit claim deed conveys to the grantee no greater rights to the property conveyed than the grantor possessed . . .; it does not constitute a muniment of title." *Lake Havasu Cmty. Hosp., Inc. v. Ariz. Title Ins. & Trust Co.*, 141 Ariz. 363, 372, 687 P.2d 371, 380 (App.1984), *disapproved on other grounds by Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218

---

3. None of the parties addressed on appeal the effect on the wrongful recording claims of the "corrective" deeds that Augusta Ranch recorded on August 14, 2003. The general rule seems to be that a corrective or corrected deed relates back to the date of the original conveyance. *See, e.g., Arnold Indus., Inc. v. Love*, 63 P.3d 721, 727

(Utah 2002). But that rule may not apply when application of the doctrine would adversely affect the interest of a third party that has intervened in the meantime. *See, e.g., Sartain v. Fidelity Fin. Servs., Inc.*, 116 Idaho 269, 775 P.2d 161, 164 (Idaho App.1989) (citing authorities).

(1987).[4] Such a deed conveys any interest the grantor possesses in the property, but neither warrants nor claims that title is valid. *See, e.g., Mich. Dep't of Natural Res. v. Carmody–Lahti Real Estate, Inc.*, 472 Mich. 359, 699 N.W.2d 272, 283 (2005) (quoting Black's Law Dictionary (7th ed. 1999)).

¶ 30 Without deciding whether a quitclaim deed may ever give rise to liability under A.R.S. § 33–420, we note that by its nature, SWC's quitclaim deed did not contain a "false claim" or "material misstatement" within the meaning of the statute. By recording the quitclaim deed, SWC asserted no particular interest in the Corner; indeed, Augusta Ranch points to no specific statement in the quitclaim deed it contends is false.

¶ 31 Augusta Ranch instead argues the quitclaim deed was invalid and groundless within the meaning of § 33–420(C) because it impliedly stated that SWC received some interest in the Corner from A.R. Development. The recording of a document is groundless or invalid pursuant to the statute "only where [it] ... has no arguable basis or is not supported by any credible evidence." *Evergreen West, Inc. v. Boyd,* 167 Ariz. 614, 621, 810 P.2d 612, 619 (App.1991). As we noted in *Evergreen,* "Black's Dictionary equates the term 'groundless' with the term 'frivolous.'" *Id.* "A claim ... is frivolous if a proponent can present no rational argument based upon the evidence or law in support of that claim...." *Id.* (quoting Black's Law Dictionary 704 (6th ed. 1990)). Accordingly, a frivolous recording is one that is "totally and completely without merit" or "without merit and futile." *Id.* (citing *Willow Creek Leasing, Inc. v. Bartzen,* 154 Ariz. 339, 343,

742 P.2d 840, 844 (App.1987); *State v. Van Dorn,* 8 Ariz.App. 228, 230, 445 P.2d 176, 178 (1968)).[5]

¶ 32 Under these authorities, in reviewing the jury verdict based on SWC's recording of the quitclaim deed it received from A.R. Development, we search the record for substantial evidence that SWC knew that the proposition that A.R. Development owned any interest in the Corner was frivolous or groundless.

¶ 33 Augusta Ranch argues that because its warranty deed to A.R. Development plainly excluded the Corner, any subsequent conveyance of the Corner by A.R. Development was groundless within the meaning of the statute. As set out above, however, the history of the ownership of the Corner was confusing, to put it mildly. Because the conveyance from The Crossings to Taiyo excluded the Corner, record title to the Corner remained in The Crossings until after the issue finally came to light in mid–2003. Nevertheless, confusion reigned. For example, Voigt, who testified he always knew A.R. Development had not purchased the Corner from Augusta Ranch, thought the City owned the Corner, not The Crossings. But in 1998 and 1999, A.R. Development dedicated rights and easements over the Corner to the City. An entity normally would not, of course, make such dedications without believing it owned an interest in the property dedicated. Not only did A.R. Development make such dedications, it knew that an affiliate of Augusta Ranch had approved them.[6]

¶ 34 In mid–2001, A.R. Development approached the City seeking to buy the Corner.

4. A "muniment of title" is "[d]ocumentary evidence of title, such as a deed or a judgment regarding the ownership of property." Black's Law Dictionary 1043 (8th ed. 2004).

5. Augusta Ranch argues that under *Richey,* 140 Ariz. 597, 684 P.2d 169, a recording is groundless when it demonstrates "no legitimate claim" to the property. The court in *Richey* held that a litigant violated A.R.S. § 33–420 by filing a lis pendens in connection with a lawsuit that "was not of the type affecting the title to the property covered in the lis pendens." *Id.* at 601, 684 P.2d at 173. We do not understand that case, which predated *Evergreen,* to undermine the teaching of the latter case.

6. Financing instruments executed in connection with A.R. Development's purchase from Augusta Ranch in 1997 required that the lender, which was affiliated with Augusta Ranch, approve dedications affecting the conveyed property. Accordingly, after A.R. Development submitted maps showing the proposed dedications, Augusta Ranch's affiliate hired an engineer to review the maps; Augusta Ranch's attorneys also reviewed and approved the maps showing the proposed dedication. Masao Horiuchi, a principal of Augusta Ranch, approved the maps, and Kumiko Kato, president of Augusta Ranch, ultimately signed them on behalf of the lender.

After somehow confirming ownership from its own records, the City issued a special warranty deed to A.R. Development for the Corner, and remarkably, as we have said, a title company insured the transaction. *See* ¶ 6 *supra.* Consistent with that "sale," Maricopa County tax records showed that A.R. Development owned the Corner from 2000 to 2001; A.R. Development, however, paid property taxes on the Corner from 1997.

¶ 35 Augusta Ranch itself was not certain it owned the Corner. Its principal, Masao Horiuchi, testified that surveys prepared for the company to show its holdings in 1996 and 1997 did not include the Corner. When the issue first arose in the summer of 2003, he said, Augusta Ranch was not "sure that we owned it." He conceded that in taking up the issue with A.R. Development and SWC, Augusta Ranch decided to "just say that it was our property, and then if it turns out that we were wrong, then we can correct it and resolve it by meeting." Of course, contrary to Augusta Ranch's assertions in June and July 2003, it did not then own record title to the Corner. Title to the Corner remained with The Crossings until Augusta Ranch arranged for the "corrective deeds" to be executed and recorded on August 14, 2003. Likely promoting further confusion, when Augusta Ranch wrote to SWC on October 1, 2003, to demand that it remove the quitclaim deed, it asserted that Augusta Ranch "is the sole owner of the title to the Property," yet failed to mention the corrective deeds, which of course post-dated the quitclaim deed SWC had recorded.

¶ 36 Although the warranty deed Augusta Ranch gave to A.R. Development in 1997 specifically excluded the Corner, the warranty deeds by which The Crossings conveyed to Taiyo, and by which Taiyo conveyed to Augusta Ranch, likewise specifically excluded the Corner. The language in those deeds did not prevent Augusta Ranch from arguing that it nonetheless had acquired the Corner. For example, in his July 11, 2003 letter to A.R. Development, Augusta Ranch's lawyer declared The Crossings had conveyed the Corner to Taiyo in 1992 and that Taiyo had conveyed the Corner to Augusta Ranch. The basis for the assertion that Augusta Ranch received title to the Corner in 1992 was precisely the same argument that SWC made in this case—that the parties to the 1992 and 1997 conveyances meant to transfer the Corner along with the other property, but mistakenly failed to do so. As Augusta Ranch's lawyer put it in June 2003, "Regardless of any mistakes in legal descriptions, there is no question that the parties involved in the transactions from The Crossings to Taiyo and Taiyo to Augusta intended that all interests in the Crossings Property, including the [Corner], be transferred as part of each bulk sale." The corrective deeds that Augusta Ranch arranged to have executed in August 2003 only reinforce the notion that the Corner was excluded by accident from the prior transactions.

¶ 37 As discussed above, the argument SWC pressed in its quiet-title claim was that the warranty deed that Augusta Ranch gave to A.R. Development should be reformed to include the Corner because its omission from that transaction was a mistake,—the same mistake Augusta Ranch acknowledged occurred in the 1992 conveyances from The Crossings to Taiyo and from Taiyo to Augusta Ranch. Considerable evidence supported SWCs contention that if the parties had understood that Augusta Ranch had acquired the Corner in 1992, the Corner would have been part of Augusta Ranch's conveyance to A.R. Development in 1997. Significantly, aside from the language of the warranty deed itself, there is no evidence in the record that Augusta Ranch specifically intended to exclude the Corner when it sold all the other property it owned south of Baseline Road to A.R. Development in 1997. As SWC contends, it strains credulity to believe that a seller would intend to sell, and a buyer would intend to buy, nearly a square mile of land at a major commercial intersection but purposefully exclude from that transaction the quarter-acre parcel closest to the center of the intersection. Consistent with the notion that Augusta Ranch did not intend to hold back any property it owned south of Baseline in its conveyance to A.R. Development, Horiuchi testified he was not aware of the Corner until events began to unfold in 2003. And Kumiko Kato, president of Augusta Ranch, was quoted in a newspaper story in 2004 as saying

that the Corner was unintentionally left out of the sale by Augusta Ranch to A.R. Development.[7]

¶ 38 Augusta Ranch argues, however, that SWC could not have been confused about who owned the Corner because it heard from its title company in June 2003, a month prior to the quitclaim deed, that title to the Corner remained in The Crossings. But during the summer of 2003, Augusta Ranch asserted *it* was title owner of the Corner, notwithstanding the recorded documents. For the same reason, we do not accept Augusta Ranch's contention that the summary judgment clearing title to the Corner in favor of Augusta Ranch established that SWC's quitclaim deed was groundless. Although we have affirmed that judgment, we cannot conclude that the legal theory SWC presented in favor of reformation was frivolous, entirely without merit or unsupported by credible evidence.

¶ 39 Nor do we agree with Augusta Ranch that testimony by an SWC executive that SWC "had reason to know [the quitclaim deed] was invalid" and "recorded it anyway, even though [it] had reason to know it could be invalid" establishes that SWC was liable under § 33–420(C). A recorded document is not "invalid" within the meaning of § 33–420 merely because it may be (or is later) proven to be insufficient, ineffective or inferior. *See Evergreen*, 167 Ariz. at 621 and n. 2, 810 P.2d at 619 and n. 2 (claim that recorded interest is "invalid" under A.R.S. § 33–420 because it is groundless will fail unless recorded interest is frivolous).

¶ 40 To prevail on its claim under A.R.S. § 33–420(C), Augusta Ranch was required to demonstrate that SWC knew the quitclaim deed it recorded was "frivolous," unsupported by any credible evidence and lacked any arguable basis. We conclude that as a matter of law, the manifest widespread confusion over title to the Corner and the intent of the parties with respect to the Corner precluded

judgment against SWC on Augusta Ranch's claim under A.R.S. § 33–420(C).[8]

**b. Claim against Cal Bank.**

¶ 41 Augusta Ranch's false-recording claim against Cal Bank was based on Cal Bank's recording of a deed of trust SWC gave it in connection with a construction loan Cal Bank made on the property. The deed of trust provided that SWC, as trustor, "hereby irrevocably grants, transfers, conveys and assigns" to a trustee, for the benefit of Cal Bank, "certain real property," including the Corner. Among other things, the deed of trust granted to Cal Bank the power upon a default by SWC to sell the "trust estate," defined to include the "entire, estate, property, right, title and interest hereby conveyed."

¶ 42 By contrast to SWC, Cal Bank cannot dispute that its recording constituted a claim of interest in real property. Moreover, when Cal Bank recorded the deed of trust on July 29, 2003, it had constructive knowledge through the Recorder's Office that title then was held by The Crossings, not by SWC. Despite that knowledge, Cal Bank recorded the conveyance from SWC. This evidence was sufficient to support the jury's conclusion that Cal Bank knew that the deed of trust it recorded from SWC was groundless, within the meaning of A.R.S. § 33–420(C).

**c. Claim against A.R. Development.**

¶ 43 Augusta Ranch alleged A.R. Development violated A.R.S. § 33–420(C) by failing to withdraw its dedication to the City in 1999 of easements and rights-of-way over the Corner and the special warranty deed it obtained from the City for the Corner in 2002. Augusta Ranch offered evidence it gave notice to A.R. Development on October 1, 2003, that the recordings were groundless and demanded that A.R. Development remove them.

7. At trial, the reporter who wrote the article testified that Kato told him the Corner was unintentionally omitted from the sale, and Augusta Ranch did not object to admission of the newspaper article in evidence.

8. Augusta Ranch contends that SWC may not seek reversal of the judgment against it under

A.R.S. § 33–420 because SWC failed to object to the jury instructions on that claim. But SWC is not arguing the instructions, which essentially recited the language of the statute, were incorrect; it argues instead that the evidence falls short of that required by cases interpreting the statute.

¶ 44 In support of the verdict against A.R. Development, Augusta Ranch cites evidence that on June 23, 2003, A.R. Development made a claim for payment from the title company that had insured its purchase of the Corner from the City the year before. In its notice of claim, A.R. Development explained it had discovered that title to the Corner was not vested in the City at the time. The evidence is undisputed that by October 2003, A.R. Development had been informed by the title company that neither it nor the City had good title to the Corner. Indeed, the title company had paid A.R. Development on the title insurance policy. On this evidence, we cannot conclude the jury erred as a matter of law by finding against A.R. Development.[9]

### d. Damages.

¶ 45 Subpart (C) of § 33–420 provides for liability "to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater." The jury awarded $12,000 in damages against A.R. Development and $15,000 against Cal Bank on Augusta Ranch's claims under § 33–420(C).

¶ 46 In support of its claimed damages, Augusta Ranch argued at trial the wrongful recordings prevented it from receiving rent for a "communications site" on the Corner between the time its claim accrued and May 2007, when the superior court quieted title in favor of Augusta Ranch. On appeal, Cal Bank and A.R. Development argue the court should have precluded this theory of damages because Augusta Ranch did not timely disclose it and because the evidence did not support it.

¶ 47 Arizona Rule of Civil Procedure 26.1 requires a claimant to disclose a "computation and the measure of damage alleged," the documents and testimony on which damages are based and the names, addresses and telephone numbers of damage witnesses. Ariz. R. Civ. P. 26.1(a)(7). The

disclosure requirements are intended to allow parties a "reasonable opportunity to prepare." *Waddell v. Titan Ins. Co.*, 207 Ariz. 529, 537, ¶ 33, 88 P.3d 1141, 1149 (App.2004). We review the superior court's decision under Rule 26.1 for an abuse of discretion. *Jimenez v. Wal–Mart Stores, Inc.*, 206 Ariz. 424, 426, ¶ 5, 79 P.3d 673, 675 (App.2003).

¶ 48 Augusta Ranch's initial disclosure statement argued its damages included "reasonable rent," and its supplemental disclosure statement asserted it had been damaged by "the value of the deprivation of [its] rights to use and enjoyment of its property." At no time, however, did Augusta Ranch disclose the sum it would seek in damages at trial on its wrongful recording claims.

¶ 49 Nevertheless, at trial, Augusta Ranch argued it had suffered lost rent of $765 a month from the date of the corrective deeds. Its damage calculation was based on a five-year "communication site lease agreement" allowing installation of "antenna facilities" at another location; it also relied on the testimony by a civil engineer that the Corner was "the kind of site that could be used for a communications site."

¶ 50 We conclude the superior court erred by denying the cross-defendants' motions for directed verdict on Augusta Ranch's claim for actual damages under A.R.S. § 33–420(C). Although Augusta Ranch's disclosure statements referred to "rents" and the value of the "right to use" the Corner, we see nothing showing that Augusta Ranch ever revealed that it would claim $765 a month in damages. Although Augusta Ranch disclosed the lease in discovery, it did not disclose its contention that it could have entered into a lease at the same rate for the Corner, but for the alleged wrongful recordings.

¶ 51 Even if we were to conclude Augusta Ranch's disclosure adequately revealed its damage theory and computation, we would reverse the awards against Cal Bank and

---

9. A.R. Development argues the superior court abused its discretion in admitting in evidence a copy of the order the court entered on summary judgment clearing title in favor of Augusta Ranch. We do not address that argument because even assuming the court erred, in view of the evidence recited above, we cannot conclude

A.R. Development was prejudiced. Nevertheless, in the event that the issue arises on remand, we note that the language in the order to the effect that Augusta Ranch "has been since January 20, 1992, the rightful owner of the Corner" is inconsistent with our conclusion, *supra* ¶ 21, regarding the state of title to the Corner.

A.R. Development because Augusta Ranch offered no evidence to support the conclusion that it could have entered into such a lease, but for any of the alleged wrongful recordings. So far as we have been able to discern, the jury had before it no evidence that any communications company was interested in leasing the Corner for a communications site or that Augusta Ranch attempted to arrange for such a lease. *See Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 164, ¶ 46, 158 P.3d 877, 887 (App.2007) (distinguishing between evidence to support the fact of lost profits and evidence to support the amount of lost profits).

¶ 52 For these reasons, we vacate the damage awards entered against A.R. Development and Cal Bank under A.R.S. § 33–420(C) and direct entry of judgment against those parties in the statutory amount of $1,000 each. *See* A.R.S. § 33–420(C).

## C. Attorney's Fees.

■ ¶ 53 The superior court granted Augusta Ranch's fee request pursuant to A.R.S. §§ 12–1103(B) (2011) and 33–420.[10] Augusta Ranch sought a total of $999,956.36 in attorney's fees from the City (its claims against the City were litigated in a consolidated case and are not at issue in this appeal), SWC, A.R. Development and Cal Bank. Allowing for rounding, the court granted the fees request in full. It ordered the City to pay $312,015.29, then ordered SWC to pay $229,313.69 in the quiet-title action, SWC and Cal Bank jointly to pay $229,313.69 on the claims for wrongful recording, and A.R. Development to pay $229,313.69 for wrongful recording.

¶ 54 In support of its request for fees, Augusta Ranch submitted detailed billing statements. With their response to the fees request, SWC and Cal Bank submitted an affidavit by former superior court judge Colin Campbell. With its reply, Augusta Ranch submitted an affidavit by former supreme court justice Thomas A. Zlaket.

■ ¶ 55 On appeal, SWC, Cal Bank and A.R. Development argue the superior court abused its discretion in entering the fee awards because Augusta Ranch's fees were grossly disproportional to the fees incurred by the other parties and to the results achieved and because Augusta Ranch failed to participate in good-faith settlement discussions prior to trial. *See generally Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187, 673 P.2d 927, 931 (App.1983). We review a superior court's grant of attorney's fees for an abuse of discretion. *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333–34, ¶ 32, 214 P.3d 415, 421–22 (App. 2009).

¶ 56 Augusta Ranch asked the court to award it $687,941 in fees against SWC, Cal Bank and A.R. Development. According to the Campbell affidavit, SWC and Cal Bank together incurred $138,000 in attorney's fees and A.R. Development incurred $135,000 in fees. Thus, SWC, Cal Bank and A.R. Development combined incurred just 40 percent of the fees Augusta Ranch asserted it incurred litigating against them. Viewed in that fashion, Augusta Ranch's attorney's fees were substantially disproportionate to the fees incurred by its adversaries on these claims. Indeed, Campbell opined, "In thirty years of practice as a lawyer and as a judge, I have not seen such a vast disproportionality in hours worked, dollars billed and staffing between lawyers in one case."

¶ 57 We do not accept Augusta Ranch's repeated assertion on appeal that the fees award is appropriate punishment for "scorched earth" litigation tactics by SWC and A.R. Development. The record contains no evidence of any such tactics by those parties. A question about title arose; SWC appropriately filed a complaint seeking a judgment clearing title. It was Augusta Ranch's counterclaim and multitude of cross-claims that ignited litigation flames that scorched the earth. Alleging conspiracy and criminal intent, Augusta Ranch not only asserted a mirror-image quiet-title action but counterclaimed for damages—and punitive

---

**10.** Pursuant to A.R.S. § 12–1103(B), the court in a quiet-title action "may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court." One who refuses to release a wrongful recording pursuant to A.R.S. § 33–420(C) "shall be liable to the owner ... for [damages] and reasonable attorney fees and costs."

damages—alleging numerous tort and statutory causes of action. Therefore, to the extent that Augusta Ranch argues that the complexities of the litigation demanded it incur the fees it did, for the most part it has only itself to blame.

¶ 58 As noted, on October 1, 2003, Augusta Ranch wrote to SWC, demanding that it "immediately release and remove" all encumbrances on the Corner by October 31. The letter warned:

> Please be advised that if we do not receive the documentary evidence mentioned above by October 31, 2003, we will start taking whatever steps we deem necessary, without any further notice to you, in order to protect our interest, right and title to the Property under the civil and criminal laws ... In such a case, this partnership will retain not only the civil attorneys but also the criminal attorneys to bring this matter to justice.

SWC responded by letter dated October 28. It told Augusta Ranch that it had notified its title insurer of the matter and said, "We respectfully request an opportunity to meet with you to discuss this property before you take any of the actions referenced in your letters." SWC further offered to pay Augusta Ranch's legal fees for any such meeting. The letter concluded, "We share your desire to resolve this matter quickly and in an amicable and non-litigious manner. Thank you in advance for your consideration of our request." When Augusta Ranch responded by letter on November 4, it brushed aside SWC's request for a meeting and instead asserted that it had received no "good faith" reply to its October 1 demand. Rather than express a willingness to negotiate a resolution to the problem, Augusta Ranch effectively declared an all-out litigation war:

> Since this partnership first notified you and complained to you about a wicked deed against this partnership and the Property, we have given you more than enough time. You have only resorted to the stalling tactics, and it has become very clear that you have no intention to solve this dispute in good faith.

\*   \*   \*

We already wasted one month because of you. The sooner we take actions under the criminal and the civil laws, the fresher our case would be against you and the other parties concerned. Since we do not want to waste any more time, notice is given you that we will take every step we deem necessary, including without limitation, judicial proceedings against you, A.R. Development, Dennis Knight, Mark Voigt, the City of Mesa, the title companies involved, and all the other parties who appear to have been in conspiracy with you, for protecting our title and right to the Property and recovering our losses and damages. We have already been caused by you to spend a lot of time and money on this matter, and we will have to continue to do so. The total time and money we will be caused to spend will be enormous, and needless to say, you and all the other people concerned will have to pay this partnership such enormous amount of damages and costs and expenses in due course.

¶ 59 Several months later, in April 2004, counsel for Augusta Ranch demanded that SWC release any claim to title to the Corner, compensate Augusta Ranch for "lost time and expenses" "in excess of $675,000" assertedly incurred in "deal[ing] with this travesty" and provide written apologies "on behalf of each of the companies and from each of the individuals who participated in these illegal transactions." SWC's principal responded by letter dated June 9, 2004, noting that he already had apologized and that he was "indeed remorseful." He said he would try to have the other participants in the transaction also apologize to Augusta Ranch. He offered to clear title to the Corner and offered to settle all of Augusta Ranch's claims for $100,000. Augusta Ranch declined. A mediation took place in February 2006. SWC and Cal Bank offered $265,000 to Augusta Ranch to release its claim to the Corner and all damage claims. Augusta Ranch walked out of the mediation without responding. Augusta Ranch argues the offer made in mediation was insufficient, given that SWC earlier had agreed to sell to a bank the portion of the Corner not dedicated to the City for $235,000. But Augusta Ranch does not ex-

plain why its only settlement demand was that SWC release any claim to the Corner and pay nearly three times that much in attorney's fees and expenses.

¶ 60 Another factor in consideration of Augusta Ranch's request for attorney's fees pursuant to A.R.S. § 33–420 is its failure to prove any damages associated with any of the wrongful recordings it alleged. Part (C) of the statute allows only "reasonable attorney fees." Given that Augusta Ranch was unable to prove it incurred any actual damages on its claims for wrongful recording, the $460,000 it sought in attorney's fees for litigating the wrongful-recording claims plainly was not reasonable. To the contrary, Augusta Ranch's own words at the outset of this dispute, quoted *supra*, demonstrate that it was determined to exact the fullest measure from SWC and A.R. Development, without regard to the reasonableness of the attorney's fees that might be required. *Cf. China Doll*, 138 Ariz. at 188, 673 P.2d at 932 (party may recover only fees "for ... service[s] which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful" outcome). In short, Augusta Ranch argues it was required to incur the fees it did in order to protect its rights. But the minimal damages it won at trial on the single set of claims that survived summary judgment (which we have reduced to statutory damages) bears on Augusta Ranch's obligation to demonstrate that its fees were reasonable under the circumstances.

¶ 61 For all of these reasons, and in view of our resolution of the other issues on appeal, we vacate the award of attorney's fees and remand for reconsideration by the superior court. In its assessment of the reasonableness of Augusta Ranch's fees request, the court shall consider, *inter alia*, Augusta Ranch's limited success on its false-recording claims and the facts regarding the parties' various attempts at settlement.[11]

## II. Augusta Ranch's Appeal.

### A. Summary Judgment on Slander of Title and Punitive Damages.

#### 1. Slander of title.

¶ 62 Augusta Ranch alleged Knight, Voigt and Kern ("the individual defendants") "recorded or caused to be recorded unfounded claims in derogation" of Augusta Ranch's title to the Corner and that in doing so, they were acting for the benefit of and in the course and scope of their employment with A.R. Development. It argues the superior court erred in entering summary judgment against it on those claims.

¶ 63 Slander of title requires proof of "the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice and special damages." *City of Tempe v. Pilot Props., Inc.*, 22 Ariz. App. 356, 363, 527 P.2d 515, 522 (1974) (citation omitted). Malice, a required element of the claim, means acting "from improper motives or without reasonable belief in the efficacy of the claim." *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 493, 421 P.2d 507, 512 (1966).

#### a. The dedications to the City.

¶ 64 Augusta Ranch argues that the individual defendants and A.R. Development "lacked reasonable belief" in the validity of A.R. Development's dedications to the City in 1998 and 1999 because they knew then that A.R. Development did not own the Corner. Voigt testified he knew that the warranty deed from Augusta Ranch to A.R. Development in 1992 specifically excluded the Corner. This evidence created a question of material fact that precluded summary judg-

11. A.R. Development argues the superior court erred by declaring in its judgment that any supplemental (post-judgment) attorney's fees award would be joint and several. The superior court has considerable discretion to award fees and to allocate them accordingly. *See Maleki*, 222 Ariz. at 333–34, ¶ 32, 214 P.3d at 421–22. While the court is not required to make an award joint and several, A.R. Development has not provided any authority prohibiting such discretion, nor have we been able to locate any. *See* ¶¶ 102–104 *infra* (affirming superior court's decision to decline to make other award of attorney's fees a joint-and-several obligation.) Whether the court abuses its discretion in imposing any future fee award jointly and severally will depend on the circumstances.

ment in favor of Voigt (who executed the dedications) and A.R. Development on Augusta Ranch's slander-of-title claim relating to the dedications to the City.[12]

### b. The warranty deed from the City.

¶ 65 Augusta Ranch also argues the superior court erred by entering summary judgment against it on its claims for slander of title relating to the recording of the warranty deed from the City to A.R. Development in 2002.

¶ 66 On summary judgment, A.R. Development offered considerable evidence that its executives were unaware of the true ownership of the Corner when they recorded the warranty deed from the City in 2002. The evidence also was that A.R. Development received a title insurance policy in connection with the City's grant and that A.R. Development relied on the City's own internal record searches, which showed that the City owned the Corner at the time of the sale.

¶ 67 Augusta Ranch argues on appeal that one should be charged in a slander-of-title action with the knowledge that a search of the Recorder's Office would reveal. It contends A.R. Development and the individual defendants had constructive knowledge from the Recorder's Office that title to the Corner remained in The Crossings, which created an issue of material fact as to their reasonable belief in the validity of the warranty deed the City gave to A.R. Development.

¶ 68 In support of this contention, however, Augusta Ranch cites only cases arising in contexts other than slander of title. *See, e.g., Stewart v. Thornton,* 116 Ariz. 107, 109–10, 568 P.2d 414, 416–17 (1977) (holder in due course); *Long v. City of Glendale,* 208 Ariz. 319, 325, ¶ 9, 93 P.3d 519, 525 (App.2004) (knowledge of accrual of claim for purposes

of A.R.S. § 12–821.01); *Guarriello v. Sunstate Equip. Corp.,* 187 Ariz. 596, 598, 931 P.2d 1106, 1108 (App.1996) (mechanic's lien); *Main I Ltd. P'ship v. Venture Capital Const. & Dev. Corp.,* 154 Ariz. 256, 259, 741 P.2d 1234, 1237 (App.1987) (notice of trustee's sale); *Gonzalez v. Tidelands Motor Hotel Co.,* 123 Ariz. 217, 218, 598 P.2d 1036, 1037 (App.1979) (knowledge of identity of fictitious defendant in personal injury action). We decline to adopt the reasoning of those cases to the extent it would allow liability for slander of title to be imposed on a party that, like A.R. Development, obtained a title insurance policy before accepting a warranty deed.[13]

¶ 69 Augusta Ranch further argues that it presented evidence that Voigt knew at the time that the City did not own the Corner. It based this contention on the fact that during the mid–1980s, Voigt had been president of Amcor. In his deposition, Voigt testified he was aware that the Corner was excluded from Augusta Ranch's sale to A.R. Development in 1997, but said he did not remember The Crossings acquiring the Corner from the City, and Augusta Ranch offered no evidence that he was aware in 2002 that the City was not the true owner of the property.

¶ 70 Augusta Ranch cites *Lucchesi v. Stimmell,* 149 Ariz. 76, 80, 716 P.2d 1013, 1017 (1986), in arguing that summary judgment may never be granted when state of mind is at issue. That case, however, did not apply that principle under circumstances such as these, where the record lacks facts sufficient to call one's state of mind into question. On this record, we conclude Augusta Ranch failed to offer evidence sufficient to create a genuine issue of fact that A.R. Development or any of the individual

---

**12.** We note that at the time of the dedications, title to the Corner lay in The Crossings, not in Augusta Ranch. A.R. Development and Voigt have not argued that Augusta Ranch's claim for slander of title fails because Augusta Ranch was not the holder of record title at the time of the alleged slanderous acts. The superior court may address that argument if the parties choose to raise it on remand.

**13.** Our conclusion is not undermined by this court's recent decision in *Delmastro & Eells v.*

*Taco Bell Corp.,* 228 Ariz. 134, 263 P.3d 683 (App.2011). In addressing whether a party had "reason to know" its lien was invalid under A.R.S. § 33–420(A), we held in that case that a party is not shielded from liability "when the party's ignorance of the invalidity of a lien arose from the party's own failure to take basic steps to assure its validity." In this case, A.R. Development took "basic steps to assure" the validity of the warranty deed by, *inter alia,* purchasing title insurance for the transaction.

defendants lacked a reasonable belief in the efficacy of the warranty deed from the City.

### c. The quitclaim deed.

■ ¶ 71 Finally, Augusta Ranch argues it offered evidence sufficient to establish an issue of fact concerning its slander-of-title claim in connection with the quitclaim deed that A.R. Development gave to SWC. Slander of title, however, requires proof of a false statement, and Augusta Ranch points to no representation in the quitclaim deed that was false. *See supra* ¶ 30.[14]

¶ 72 In sum, we vacate and remand the judgment on Augusta Ranch's slander-of-title claim based on the recordings of the dedications to the City. Although we have held that a question of fact exists as to the "malice" element of the tort of slander of title, to prevail on that claim, Augusta Ranch also will be required to prove the dedications caused it special damages. *See Pilot Props.,* 22 Ariz.App. at 363, 527 P.2d at 522. We affirm the superior court's entry of summary judgment against Augusta Ranch on its claim for slander of title based on the warranty deed from the City and the quitclaim deed.

### 2. Punitive damages.

■ ¶ 73 Augusta Ranch next argues the superior court erred by entering summary judgment dismissing its claim for punitive damages against SWC, Cal Bank and W.M. Grace.

■ ¶ 74 Punitive damages are appropriate "only in the most egregious of cases," in which the defendant's "reprehensible conduct" and "evil mind" are proven by clear and convincing evidence. *Sec. Title Agency, Inc. v. Pope,* 219 Ariz. 480, 498, ¶ 81, 200 P.3d 977, 995 (App.2008) (quotation omitted). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, consciously disregarding the unjustifiable substantial risk of significant harm to them." *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn,* 184 Ariz. 120, 132, 907

P.2d 506, 518 (App.1995) (quotation omitted). Summary judgment dismissing a punitive damages claim is appropriate in the absence of facts sufficient to show by clear and convincing evidence that the defendant acted with the requisite evil mind. *See Thompson v. Better–Bilt Aluminum Prods. Co.,* 171 Ariz. 550, 557–58, 832 P.2d 203, 210–11 (1992).

¶ 75 Augusta Ranch's claims for punitive damages were based entirely on a dispute over rights to the Corner, an unimproved quarter-acre of real property. Augusta Ranch cites *Campbell Estates, Inc. v. Bates,* 21 Ariz.App. 162, 168, 517 P.2d 515, 521 (1973), for the proposition that a defendant in a dispute over land is subject to punitive damages for conduct that demonstrates "reckless indifference to the interests of others." After our decision in *Campbell,* however, our supreme court in *Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986), held that punitive damages are not available absent proof of an evil mind, meaning proof of intent to injure or acts that are in conscious disregard of an unjustifiable substantial risk of significant harm to another.

¶ 76 Augusta Ranch argues clear and convincing proof of "reprehensible conduct" and an "evil mind" is found in SWC's acceptance of a quitclaim deed for the Corner after learning The Crossings held title to the Corner, not A.R. Development. Augusta Ranch points out that SWC closed the transaction without contacting Augusta Ranch or investigating whether the Corner was intended to be conveyed to A.R. Development in the 1997 sale from Augusta Ranch. It further argues that SWC disregarded Augusta Ranch's rights by going forward with the transaction because it was protected by title insurance. Augusta Ranch also argues that rather than resolve the matter, SWC immediately entered into a shopping center lease that included the Corner and recorded a deed of trust against the Corner even though it knew there was a title issue regarding the property. It also points out that SWC and Cal

---

14. Although Augusta Ranch alleged that the individual defendants and A.R. Development committed slander of title by oral statements, the only arguments it makes on appeal concern the dedications, the warranty deed from the City of Mesa and the quitclaim deed.

Bank rejected its subsequent demands to release their claims to the Corner.

¶ 77 Viewing the evidence and reasonable inferences in the light most favorable to Augusta Ranch, *Brookover v. Roberts Enterprises, Inc.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App.2007), we conclude the evidence presented on summary judgment was insufficient for a jury to find by clear and convincing evidence that SWC, Cal Bank and W.M. Grace "intend[ed] to injure or defraud, or deliberately interfere[ ] with the rights of [Augusta Ranch], consciously disregarding the unjustifiable substantial risk of significant harm to [it]." *Hyatt*, 184 Ariz. at 132, 907 P.2d at 518 (citation omitted).

¶ 78 None of the evidence Augusta Ranch presented suggested SWC had reason to know Augusta Ranch owned the Corner before it accepted the quitclaim deed; rather, the evidence was that SWC discovered that The Crossings, rather than A.R. Development, held record title. Nor, contrary to Augusta Ranch's assertions, did the evidence on summary judgment suggest SWC was aware its title company issued title insurance on the Corner based on alleged misrepresentations by A.R. Development. Moreover, the evidence recounted above demonstrated that SWC had a colorable, although ultimately not prevailing, legal argument that A.R. Development should be awarded title to the Corner by virtue of reformation. Finally, although SWC did not release its quitclaim deed upon receipt of Augusta Ranch's demand, SWC tried to settle the dispute, and when its settlement entreaties failed, it filed a complaint seeking a judicial determination of title. This evidence is far short of that required to find that SWC intended to injure or defraud Augusta Ranch or deliberately interfered with Augusta Ranch's rights while consciously disregarding the unjustifiable substantial risk of significant harm to it. *See id.*

¶ 79 We likewise conclude Augusta Ranch failed to create a genuine issue of material fact as to the conduct of Cal Bank and W.M. Grace. At most, the evidence showed Cal Bank issued and recorded the deed of trust with constructive knowledge that SWCs title

was invalid. Moreover, Augusta Ranch presented no evidence whatsoever that W.M. Grace was aware of any title issue or of Augusta Ranch's claim to the Corner. As a result, we affirm the superior court's grant of summary judgment on punitive damages.[15]

**B. Denial of Motion to Amend to Conform to the Evidence.**

¶ 80 At the close of its case, Augusta Ranch moved pursuant to Arizona Rule of Civil Procedure 15(b) to amend its pleadings to reinstate its claim for slander of title by A.R. Development and for punitive damages against certain unspecified parties. On appeal, Augusta Ranch argues the court erred in denying that motion and refusing to instruct the jury on slander of title and punitive damages.

¶ 81 Rule 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time. . . .

Ariz. R. Civ. P. 15(b). The superior court has discretion to rule on a motion to amend the pleadings to conform to the evidence. *Bujanda v. Montgomery Ward & Co.*, 125 Ariz. 314, 315, 609 P.2d 584, 585 (App.1980).

¶ 82 As SWC points out, the court did not abuse its discretion in denying Augusta Ranch's motion because neither the slander of title nor the punitive damages claim was "tried by . . . consent of the parties." The evidence on which Augusta Ranch relied was offered on its wrongful recording claims, not by consent on the claims that were dismissed on summary judgment prior to trial. Consent to try an issue outside of the pleadings may not be implied by the opposing party's failure to object to the admission of evidence relevant to an issue with-

---

**15.** Because of the manner in which we resolve this issue, we need not address SWC's contention that as a matter of law, punitive damages are not available for a violation of A.R.S. § 33–420.

in the pleadings. *Bujanda,* 125 Ariz. at 316, 609 P.2d at 586.[16]

## C. Preclusion of Evidence of Damages on Augusta Ranch's Claims for Wrongful Recording, Trespass and Conversion.

¶ 83 Augusta Ranch appeals from the superior court's preclusion on disclosure grounds of evidence of damages it sought to offer on its claims for wrongful recording, trespass and conversion. We conclude the court did not abuse its discretion in precluding the evidence.

¶ 84 Augusta Ranch's appraiser testified at trial about the value of the Corner, but the court precluded him from estimating the value of the loss of use of the property as a result of the alleged wrongful recordings because Augusta Ranch had failed to disclose that testimony pursuant to Arizona Rule of Civil Procedure 26.1.

¶ 85 Augusta Ranch's comprehensive final disclosure statement stated only generally that it would seek to prove "the value of the deprivation of [its] rights to use and enjoyment of its property prior to title being quieted" and that "expert discovery still to come may shed additional light on the nature and extent of damages." Additionally, the disclosure statement stated only that the appraiser would testify "regarding the value of the Corner property" and failed to disclose that he would testify to loss of use. Although SWC did not depose the appraiser, the disclosure gave SWC no reason to believe he would testify about the value of the loss of use of the Corner.

¶ 86 Augusta Ranch argues it could not have disclosed the amount it would seek in damages for loss of use because that calculation depended on the date the court entered judgment clearing its title to the Corner. But Augusta Ranch offers no explanation for its failure to disclose prior to trial any amount of damages it incurred (for example, a monthly rent amount) for loss of use of the Corner. Moreover, it failed to disclose prior to trial that the appraiser would testify to any loss of use, let alone calculate loss of use.

¶ 87 The facts of this case are unlike those in *Bryan v. Riddel,* 178 Ariz. 472, 875 P.2d 131 (1994), on which Augusta Ranch relies. Most significantly, the superior court in that case precluded testimony of witnesses who were disclosed several weeks before trial, while here the court granted an objection to inadequately disclosed evidence offered for the first time during trial.

¶ 88 Because Augusta Ranch's pretrial disclosure failed to comply with Arizona Rule of Civil Procedure 26.1(a)(7), we cannot conclude the court abused its discretion in limiting the appraiser's testimony. *See Bryan,* 178 Ariz. at 477, 875 P.2d at 136 (suggesting that when a party's disclosure is inadequate, the superior court should limit the witness's testimony rather than preclude the witness from testifying).

¶ 89 The court also precluded Horiuchi from testifying about the damages Augusta Ranch argued it incurred as a result of the alleged trespass and conversion. According to Augusta Ranch, Horiuchi would testify that Augusta Ranch incurred $20,000 in paying for security guards, construction and relocation of a fence and engineering fees, approximately $600,000 in attorney's fees in litigating title issues against the City and SWC, and costs and expenses of approximately $50,000 as a result of the wrongful recordings.

¶ 90 Augusta Ranch's initial disclosure statement stated generally that its damages included "the cost of acquiring [and] maintaining the boundary fence necessitated by defendants' continuing and occurring trespass; the expenses of security guard [sic]; expense of signs; damages to real property ... and the cost to remove unauthorized improvements and restore the land." Its final disclosure statement added that it would

---

**16.** Augusta Ranch argues that SWC and A.R. Development "consented" to the motion because they failed to object to it. The record does not support that contention. After Augusta Ranch orally moved to amend its pleading at the close of its case in chief, the court immediately denied the motion without inviting a response from SWC or A.R. Development. Augusta Ranch's counsel then told the court that notwithstanding the court's denial of the motion, Augusta Ranch would file the motion in writing. Under the circumstances, SWC and A.R. Development did not waive an objection by failing to respond in writing to Augusta Ranch's motion.

seek "all attorneys' fees and costs associated with this litigation [and] all costs and losses sustained by Augusta Ranch [ ] as a result of the wrongful conduct of other parties."

¶ 91 The court refused to permit Horiuchi's testimony because of Augusta Ranch's failure to disclose prior to trial the amount, by category, of damages it alleged it incurred as a result of the alleged trespass and conversion. We agree that Augusta Ranch's disclosures failed to provide any "computation and [ ] measure of damage[s]." *See* Ariz. R. Civ. P. 26.1(a)(7). Augusta Ranch argues it disclosed that it had incurred $20,000 in trespass damages in a May 28, 2004, letter from Augusta Ranch to SWC produced in discovery by SWC. The letter is not identified in the record, but according to the trial transcript, it stated only the amount without any explanation of the figure. Without additional evidence in the record, we cannot conclude the superior court abused its discretion. *Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993).

## D. Directed Verdict on Trespass and Conversion Claims.

¶ 92 Augusta Ranch also appeals from the court's grant of directed verdict on its trespass and conversion claims against SWC and W.M. Grace.

¶ 93 A directed verdict is appropriate if "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505, 917 P.2d 222, 234 (1996) (quoting *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)). We review a directed verdict *de novo*, viewing the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Shoen v. Shoen*, 191 Ariz. 64, 65, 952 P.2d 302, 303 (App.1997).

¶ 94 The directed verdict against Augusta Ranch on its conversion and trespass claims followed from the court's order precluding its evidence of damages on those claims. The court reasoned that because damages were a necessary component of both claims, the claims necessarily failed once Augusta Ranch's evidence of damages was precluded.

¶ 95 Proof of actual damages, however, is not a required element of a trespass claim. *Taft v. Ball, Ball & Brosamer, Inc.*, 169 Ariz. 173, 176, 818 P.2d 158, 161 (App.1991) ("One is subject to liability to another for trespass, *irrespective of whether he thereby causes harm* to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so . . . ." (emphasis added) (quoting Restatement (Second) of Torts § 158 (1965))); *see also* Restatement (Second) of Torts § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."). When a trespass does not result in actual harm, the aggrieved party may bring an action for nominal damages. *See Hale v. Brown*, 84 Ariz. 61, 73, 323 P.2d 955, 963 (1958) (it is a "well-established and deeply-rooted legal principle that a person has the right to vindicate any trespass upon his legal rights by an action in tort for at least nominal damages" (Phelps and Struckmeyer, JJ., dissenting)).

¶ 96 SWC argues that Augusta Ranch is not entitled to nominal damages on its trespass claim because its complaint sought compensatory damages, without specifying nominal damages. It offers no authority to support its assertion that a failure to prove compensatory damages bars a party from recovering nominal damages under these circumstances.

¶ 97 We conclude that because Augusta Ranch presented sufficient evidence from which the jury could conclude SWC and W.M. Grace committed a trespass on the Corner, the superior court erred in granting a directed verdict in favor of SWC and W.M. Grace on Augusta Ranch's trespass claim.

¶ 98 Uncontradicted evidence at trial established the other elements of trespass. SWC's principal admitted SWC hired W.M. Grace to enter onto the Corner for construc-

tion work. Also, a civil engineer and surveyor hired by Augusta Ranch testified that he saw W.M. Grace's employees working on the Corner. Given this uncontroverted evidence, no reasonable jury could have found Augusta Ranch failed to prove SWC and W.M. Grace intentionally entered or caused another to enter Augusta Ranch's land. *Taft,* 169 Ariz. at 176, 818 P.2d at 161. As a result, we reverse the judgment against Augusta Ranch on its trespass claims; on remand, we direct the superior court to enter judgment in favor of Augusta Ranch but to enter an award of no more than nominal damages against SWC and W.M. Grace.

¶ 99 Nor is proof of actual damages required for a claim for conversion (trespass to chattels). An award of nominal damages in the absence of proof of actual damages may be made in an action for trespass to chattels when there has been a dispossession. *Koepnick v. Sears Roebuck & Co.,* 158 Ariz. 322, 331, 762 P.2d 609, 618 (App.1988) (citing Restatement (Second) of Torts § 218 cmt. d). "A dispossession may be committed by intentionally (a) taking a chattel from the possession of another without the other's consent, or ... (c) barring the possessor's access to a chattel"; in other words, a person commits a dispossession by assuming control over the chattel in a way inconsistent with the possessory interest of the other person. *Id.* (quoting Restatement (Second) of Torts § 221).

¶ 100 There was evidence at trial that Augusta Ranch had installed a barbed-wire fence surrounding the Corner, and that W.M. Grace employees working in the area tore down the fence. Although a W.M. Grace supervisor said his crew intended to replace the fence, Augusta Ranch replaced the fence itself. This evidence was sufficient to support Augusta Ranch's claim for trespass to chattels, but in the absence of proof of actual damages, Augusta Ranch is entitled only to nominal damages on this claim. On remand, the superior court is directed to enter judgment and an award of nominal damages in favor of Augusta Ranch and against W.M. Grace.

### E. Joint–and–Several Liability.

#### 1. Damages.

¶ 101 Augusta Ranch argues that the superior court should have imposed damages on the wrongful recording claims jointly and severally against SWC, Cal Bank and A.R. Development. SWC argues the evidence does not support joint-and-several liability and in any event, Augusta Ranch waived this issue by failing to raise it in the superior court and by agreeing to forms of verdict that directed the jury to apportion damages. Because we have held that Augusta Ranch is entitled only to statutory damages on its claims for wrongful recording, we will not address this issue.

#### 2. Attorney's fees.

¶ 102 Augusta Ranch also argues that the superior court erred in not ordering attorney's fees to be imposed on SWC, A.R. Development and the other parties jointly and severally. It cites *Landin v. Ford,* 151 Ariz. 273, 276, 727 P.2d 326, 329 (App.1985), but that case does not stand for the proposition that attorney's fees always must be awarded jointly and severally. The *Landin* court only concluded the superior court in that case erred in not awarding joint-and-several attorney's fees "[i]n order to avoid any possibility of double recovery." *Id.* The prospect that Augusta Ranch would be overpaid was avoided in this case when the superior court apportioned the fee award among SWC and the various cross-defendants.

¶ 103 Citing *Murphey v. Gray,* 84 Ariz. 299, 327 P.2d 751 (1958), Augusta Ranch also argues that fees awarded pursuant to a statute are analogous to costs, which it contends are imposed jointly and severally. But a cost award is joint and several when the associated damages award is joint and several. *Welch v. McClure,* 123 Ariz. 161, 165, 598 P.2d 980, 984 (1979) ("The general rule is that total costs are taxed against defendants who are jointly and severally liable on the judgment."). Here, because the parties are not jointly and severally liable for damages, they need not be jointly and severally liable for costs or attorney's fees.

¶ 104 Finally, our conclusion is further supported by the broad discretion the superior court has in awarding fees. Augusta Ranch cites *Pettay v. Insurance Marketing Services, Inc.*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (App.1987), for the proposition that "the court is not required to allocate the fees expended" between the responsible parties. But nothing in *Pettay* or in any of the other cases Augusta Ranch cites forbids the court from allocating such fees. Therefore, we will not disturb the superior court's discretion to allocate the fees among the parties.

**F.  Supplemental Attorney's Fees.**

¶ 105 Augusta Ranch finally argues the superior court abused its discretion when the court declined to rule on its request for a supplemental award of $96,829 in fees it asserts it incurred addressing post-trial motions after it submitted its original post-trial fees application.

¶ 106 The superior court entered judgment on October 3, 2008. SWC and A.R. Development then filed appeals from the judgment. Augusta Ranch applied for a supplemental award of attorney's fees on September 4, 2009. The superior court denied the supplemental request "without prejudice to a post-appeal application."

¶ 107 Under these circumstances, the superior court lacked jurisdiction to grant Augusta Ranch's request for fees. *McHazlett v. Otis Eng'g Corp.*, 133 Ariz. 530, 533, 652 P.2d 1377, 1380 (1982); *see also Castillo v. Indus. Comm'n*, 21 Ariz.App. 465, 467, 520 P.2d 1142, 1144 (1974). Because the superior court lacked jurisdiction to award supplemental fees while the case was pending on appeal, we have no jurisdiction to consider Augusta Ranch's appeal on this issue. *McHazlett*, 133 Ariz. at 533, 652 P.2d at 1380 ("If a lower court has no jurisdiction to issue an order an appeal from that order gives the appellate court no jurisdiction except to dismiss the appeal.").

**CONCLUSION**

¶ 108 For the reasons stated above, we affirm summary judgment in favor of Augusta Ranch on its quiet-title claim. We reverse the judgment in favor of Augusta Ranch on its claims for wrongful recording pursuant to A.R.S. § 33–420(A) and its judgment against SWC pursuant to A.R.S. § 33–420(C). We affirm the judgment pursuant to A.R.S. § 33–420(C) against Cal Bank and A.R. Development but vacate the damage awards on those claims and direct entry of statutory damage awards against Cal Bank and A.R. Development in the amount of $1,000 each.

¶ 109 Further, we affirm entry of summary judgment against Augusta Ranch on its slander-of-title claims based on the recording of the warranty deed from the City and the quitclaim deed, but we reverse and remand for further proceedings the slander-of-title claim against A.R. Development and Voigt based on the dedications to the City in 1998 and 1999. We also reverse the directed verdict the superior court entered against Augusta Ranch on its claims for trespass and conversion against SWC and W.M. Grace and remand those claims with instructions to the superior court to enter awards of nominal damages on those claims in favor of Augusta Ranch.

¶ 110 We affirm the superior court's orders denying Augusta Ranch's motion to amend pursuant to Arizona Rule of Civil Procedure 15(b) and precluding evidence of damage on Augusta Ranch's claims for wrongful recording, trespass and conversion. We also affirm the court's orders concerning joint-and-several liability. Finally, we vacate and remand the attorney's fees awards against SWC, Cal Bank and A.R. Development. The superior court shall reconsider Augusta Ranch's fees request in light of our resolution of the issues in this appeal and the discussion concerning fees, *supra* ¶¶ 53–61.

¶ 111 We decline to grant any party its fees on appeal.

CONCURRING: MICHAEL J. BROWN, and JOHN C. GEMMILL, Judges.